### Deering Harvester Company v. Patrick S. Hefferman, by His Next Friend.

1. MASTER AND SERVANT—*Servant  Can Not Recover  for an Injury Which is the Result of Mere  Accident.*—A servant can not recover for injuries inflicted upon him by reason of his accidently setting a machine into operation while being examined for the purpose of adjustment.

Trespass on the Case, for personal injuries.  Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge presiding.  Heard in the Branch Appellate Court at the March term, 1902.  Reversed and remanded.  Opinion filed April 28, 1903.

F. J. CANTY and AMERICUS B. MELVILLE, attorneys for appellant.

O'DONNELL & BRADY, attorneys for appellee;  EDWARD C. HIGGINS, of counsel.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This was an action brought to recover damages for injuries sustained by appellee while working for appellant, appellee then being a boy seventeen years of age.  Appel-

Deering Harvester Co. v. Hefferman.

lee, at the time of his injury, was working with a punching machine, with the operation of which he was familiar and had been working with for some time.   This machine was a heavy iron structure operated by electric power and was used in punching holes in iron castings.   The declaration charges that the machine was supplied with a die of irregular, worn and broken surface; the surface thereof being uneven, worn and irregular, and that the die, when the punch was descending, shifted or moved from its position and the punch consequently did not penetrate the hole of the die, but struck the sides or top thereof, causing the said punches to break or snap off.

The declaration also alleges in another count that by reason of the die of such machine being of uneven and broken surface, and by reason of the foreman of appellant commanding appellee to begin working and operating said machine, when it was in such condition, the said die moved or shifted its position and consequently the punches did not strike the holes into which they were designed to fit, but struck another point, whereby the plaintiff was injured.

Counsel for appellee in their brief say:

" We contend that the record abundantly shows the fact that the die which was inserted in the ore or hole towards the end of the die-plate was worn away at its sides, which formed the inner sides of the grooves so that they become rounded, and by reason thereof the dies in the plate were sufficiently shifted and thrown out of plumb so that the descending punches were not true and became broken by striking on the edges of the dies instead of squarely entering them as they should."

At the time of the injury appellee was working with a die, known as " Number H. 455."   Appellee, upon the trial, testified as follows:

" Q.   What time of the day was it that you went to work on this H. 455 ?   A.   Between a quarter after ten and eleven o'clock.

Q.   Who set the die for you ?   A.   Kleinschmidt.

Q.   Did he adjust the punch also ?   A.   Yes, sir.   When he set this die he says to me, ' You want to be careful with this big hole; Dorsey is kicking about them not coming

straight;' and he punched a few. And the casting had rocked on the bottom of the die, like this. I said, 'The casting rocks there.'

Q. What was around the die, if anything? A. There was a small groove for this end to fit in.

Q. Well, how was that? What was the condition of that? A. Why, it was round; it was almost worn round. I told him the casting would rock. 'Well,' he says, 'hold it firm and it will go all right.' So I sat down and worked, maybe—

Q. After he set the die did he do anything? A. He punched a few.

Q. Did he say anything to you? A. He told me to hold it straight. When he got through punching he got up and I sat down, and he looked at me working. He stood back of me. When I was punching the first hole—the biggest, about the size of a lead pencil—I stepped on the treadle and the punch came down and bent and these other small punches broke off.

Q. What happened to the die? A. It shifted; this casting. The rocking of that was the cause of the bottom die shifting.

Q. What happened to you when these punches broke? A. It flew and struck me in the eye. Another piece struck him in the fleshy part of the cheek.

I was working by the piece. If the hole didn't punch clear through, clean and true, the casting was spoiled and was thrown away. All the time I was there if I got a casting that didn't have an accurate and correct hole punched, it was spoiled and thrown into the scrap pile. If the casting didn't punch right we looked to the machine or had some one do so to see what was the trouble."

Kleinschmidt, the foreman of appellant, testified as follows:

" On the day plaintiff was hurt I was called down to where he was. He said the die shifted on him. I told him to loosen the lower die and he did. When he told me the die was shifting I told him to loosen the lower die. He did so. I stooped down and took hold of the lower die-plate with both hands. I told Hefferman to lower the head. Instead of doing that he stepped on the treadle and the punch came down while the lower die wasn't in position, and it broke the punches. A piece of the metal hurt my left eye, lower lid, leaving a scar which is there

now.   Plaintiff also got hurt at the same time.   Hefferman put his foot on the treadle when I told him to lower the die.   He had helped me at other times when I was setting dies on that machine, and had lowered the head at those times all right.   Defendant's Exhibit 'A' handed me is a cut of the machine.   The holes in the wheel at the star head are used to lower the head by putting a lever or bar in the holes in the wheel.   At the other times he had helped me to set the die I had told him how to lower the head by putting the lever in the hole or collar shown on the star-head at left of the cut Exhibit 'A,' and pull the lever down by hand slowly; that brings the head down slowly. In using the bar in the star-head it had nothing to do with the clutch at all.   By putting the foot on the foot-lever or treadle you operate the machine.   All four of the drills were broken.   After I had taken care of my injured eye I came back to the machine and found the dies and punch broken.   By the 'dies' I mean those steel pieces that are inserted in the die-plates.   Neither the upper or lower die-plate was injured.   I then took out the dies and put in new ones and new punches.   The die and punches in the machine were in good shape when I was called over by Hefferman when he wanted it fixed.   I don't remember what time it was when I got through putting in the dies and punches.   It was in the afternoon.   In punching a casting like H. 455 the casting should fit loose.   If the casting fit tight you couldn't punch it in the right place, and if the casting was rough and uneven it would punch the hole on one side.   The dies are made of tool steel.   When new they are more oval on top than when they have been used awhile; as the die is used it becomes flatter instead of more oval.   Wear and grinding is the cause of dies flattening, and as they are ground from time to time they keep flat and get lower.   The fact that the casting went into the part where the large hole is, loose, would not have any effect upon the die-block itself getting loose.   If the casting was so it rocked that would not have any effect on the die-block getting loose."

" Q.   You may state whether or not there is a gauge—

Mr. Brady :   That is admitted; that he will testify the same as Mr. Tanzer about the gauge—being a gauge there to test the measurement of his work with.

Mr. Melville :   And that the men test their measurements ?

Mr. Brady :   Yes, sir; just exactly as Mr. Tanzer said in regard to the gauge.

Witness : In the constant use of punching machines, the lower die-plate sometimes shifts. By the use of the gauge, an operator can tell whether the die-plate is shifting. When he does find such to be the fact, he must loosen the lower die and reset it. Shifting frequently happens in the use of all punching machines."

John Prodzke testified :

" Mr. Kleinschmidt was stooping down, looking at the machine, and then I looked again and saw Hefferman standing, and his eye was hurt."

The machine was operated by electric power. Stepping on the treadle put on the electric power and caused the machine to operate; that is, brought the punches down with force, so that they would go through the iron through which holes were to be punched. It is clear from the evidence, not only of the plaintiff and Kleinschmidt, but from others, that the injury to the plaintiff was caused by his stepping on the treadle, and thus throwing the power onto the machine at a time when he and Klein-schmidt were adjusting the machine and experimenting with it, for the purpose of adjusting it so that the punches would come down and enter the holes in the die in a proper manner. That plaintiff had, as he testifies, been told to lower the upper or male part of the machine with the bar on the star-head while he fixed the other one; and that he, plaintiff, as he testified, did lower it down with the bar, and then raised it up, when Kleinschmidt told him to lower it again, which plaintiff says he did again, probably. That the adjustment of the machine had not been finished by Kleinschmidt, and there was no intention or direction on his part to have the power thrown onto the machine, and that the putting by plaintiff of his foot upon the treadle, and thus bringing the electric power into operation, was an accidental thing on his part. The weight of the evidence was, that the machine was in good working order, and that the oval condition of the groove around the die was not due to this groove being worn so that it permitted the die to rock, but rather to the groove being new; that the groove was intentionally made round, and

that instead of growing more so from use, the groove or oval has a tendency to become flattened by use. The preponderance of the evidence is, that machines of this kind are designedly made so that the castings will fit in them loose; that if the casting was rough and new and fit in tight and snug, it would bend the iron; that the purpose of making new dies more oval than the die in use at the time of the accident is, that the grinding may and will be facilitated when it becomes necessary. There were four punches in the machine at the time of the accident; all of these were broken by being driven down suddenly and unexpectedly by the electric power when plaintiff put his foot upon the treadle. Plaintiff had before this been shown how to lower the punches slowly by hand by pulling the lever down slowly. The machine by which plaintiff was injured has been brought to this court as an exhibit. An examination of it, in connection with other evidence, shows clearly that the allegations of the plaintiff's declaration are not sustained, and that the injury to plaintiff was due to his having put his foot upon the treadle, and so brought the punches down that all four of them were broken while the machine was being adjusted by appellant's foreman and plaintiff working together.

The judgment of the Superior Court for the plaintiff is reversed and the cause remanded.